IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

USA,
Plaintiff.

Hon. Judge Paul A. Engelmayer
No. 1:21CR00661-002 (PAE)

v.

NELSON AGRAMONTE-MINAYA,
Defendant.

## EMERGENCY MOTION TO ADD A TERM OF STATUTORILY MANDATED SUPERVISED RELEASE

The defendant, pro se, hereby files this Emergency Motion To Add A Term Of Statutorily Mandated Supervised Release. Through this motion, the defendant request this Court to impose the statutorily mandated 4 years of supervised release. The reason that the defendant has labelled the motion as an "emergency" is because the defendant's FSA conditional release date is fast approaching. Thus, he is close to being eligible for immediate release if the Court GRANTS the instant motion. It is worth noting that at least two separate U.S. Attorneys' Offices' have done the right thing under identical facts and circumstances by conceding this issue, acknowledging their mistake, and asking the Court to issue an amended judgement. See USA v. Wellington Ramon Encarnacion De La Cruz, no. 28-cr-58-mas, ECF-83 granting ECF 72 (Dt. New Jersey). See also USA v. Johan M. Rodriguez, No. 1:23-CR-00020-JL-1, ECF-30 (Government's response conceding the emergency motion to add a term of statutorily mandated supervised release (ECF-29)). In Rodriguez, the Court issued an endorsed order GRANTING ECF-29 on 2/12/2026. The US Attorneys' Office in Rodriguez recognized that the defendant was overserving and conceded the issue in less than 1 day of the motion being filed. Similarly, the Court issued the ORDER within 24 hours of the Government's response. The defendant hopes and prays that the U.S. Attorneys' Office of this district follows suit and promptly does the right thing here, as well, conceding the issue so he can benefit from FSA time-credits.

## I. PROCEDURAL BACKGROUND.

Pursuant to a plea agreement, the defendant pled guilty to a count one of the indictment (Dkt-9), in violation of 21 U.S.C. 846, 21 U.S.C. 841(b)(1)(B). On 06/03/2022, his change of plea hearing was held. On 11/17/2022, he was sentenced to 108 months imprisonment. See Dkt-82 for the judgement. He is currently serving this sentence in the custody of the BOP at FCI Allenwood Low. At the time of sentencing, the Court did not impose a term of supervised release as required by the statue.

## II. PERTINENT FACTS.

(1) Defendant is not receiving the benefit of FSA time-credits.

At sentencing, the Court did not impose a term of supervised release citing U.S.S.G 5D1.1(c). However, this was an error because the statue of conviction and the plea agreement, both required a 4 year supervised release. Due to the absence of a term of supervised release, he is ineligible to have his FSA time-credits be applied towards early release. His plea agreement explicitly required "a mandatory minimum term of supervised release of four years." See Exhibit-A. His PSR report also included this explicit statutory requirement of supervised release stating, "the court must impose a term of supervised release of at least four years." See Dkt-75 at 15 para 87. At the change of plea hearing, the Court again emphasized that the defendant understood that, "there would be a mandatory minimum term of four years' supervised release." See Dkt-57 at 11. Upon information and belief, it is precisely for this reason that the Court, for several more culpable codefendants' and for the exact same conviction, sentenced them to a term of at least 4 years of SRT.

(2) The Sentencing Transcript Clarifies Why The Court, Defense Counsel, and The Government All Made This Mistake.

At sentencing, the Court stated, "I note that the probation department recommends a term of supervised release," and then while pointing to the arbitrary application of supervised release; the Court asked both the Government and Defense Counsel, "unfair question to put to you, but if anybody has any idea the rhyme or reason between when it gets recommended in a case like this and when it doesn't?." Defense counsel, Mr. Cecutti stated, "I have no idea," and AUSA Rothschild too was confounded. See Dkt-84 at 18-19. As a result, the Court never received the correct advise, that the terms of the plea agreement, the statue of conviction, and the plea colloquy unequivocally required imposition of a term of 4 years of SRT.

(3) 3553(a) Factors.

The defendant has no criminal history. He has only helped this analysis further by participating in evidence based recidivism reduction (EBRR) programming, timely paying his restitution payments, and otherwise maintaining a clear disciplinary record. In fact, he received an exemplary "work performance rating" for being "an outstanding laundry orderly," by the correctional counselor. See Exhibit-B. However, this should come as no surprise to this Court, which at sentencing, applauded his "outstanding marks for the jobs..taken at the MDC," and stated it was "unlikely" for him to re-offend. See Dkt-84 at 74-75. The Court further commended the extensive support letters received by the defendant from friends and family, again reiterating the unlikelihood of reoffending, "I have a lot of confidence that this will be the last time any judge has any need to see you in a courtroom." Id. at 85. While codefendants Carlos Maisonet-Lopez, Jorge Aponte-Guzman, and Camilo Enrique-Nunez were more culpable than the defendant, they will effectively serve less time compared to him. In fact,

the Government categorized Enrique-Lopez as "the leader of the drug trafficking organization," and conceded that the defendant "participated for a briefer amount of time than did either Jorge Aponte or Carlos Masinet." Id. at 51. Thus, although the Court's intent was to avoid unwarranted sentencing disparities, the complex application of FSA time-credits has caused the opposite result, wherein more culpable defendants' are serving at least 1 year less than the defendant. It is precisely why at least two U.S. Attorneys' Offices' have conceded such an issue either waiving off the Rule 35's fourteen day requirement, or agreeing that section 3582 warrants relief. See Dkt-79 in USA v. Wellington Ramon De La Cruz, the Government waived the 14-day requirement for a Rule 35(a) motion.

III. ARGUMENT..

(1) Defendant is both eligible and entitled to receiving FSA Time-Credits.

The FSA allows certain incarcerated individuals to earn credits by participating in "recidivism reduction programs" and to apply those credits "towards time in prerelease custody or supervised release." 18 U.S.C. Section 3632(d)(4)(C). Up to 365 days may be used to reduce a defendant's sentence. 18 U.S.C. 3624(g)(3). A prisoner is ineligible to apply his FSA time-credits towards early release, if he is "the subject of a final order of removal." 18 U.S.C. Section 3632(d)(4)(E)(i). The defendant does not have a final order of removal and has been diligently participating in recidivism reduction programs, therefore, he is eligible to have his FSA time-credits apply towards early release. However, the BOP cannot apply any FSA time credits earned by a prisoner towards early release if the sentence did not include a term of supervised release. 18 U.S.C. Section 3624(g)(3). Because the defendant's sentence did not include a term of supervised release, BOP has refused to apply his FSA time credits towards early release.

(2) Defendant's sentence should include a term of supervised release.

There are at least six different ways for this Court to conclude that the defendant's sentence should include a term of supervised release.

First, both the Sentencing Guidelines and 18 U.S.C. 3583 provide for the imposition of supervised release even for a deportable alien. The statue provides: "The Court, in imposing a sentence to a term of imprisonment....may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release..except that the court SHALL include as a part of the sentence a requirement that the defendant be placed on a term of supervised release IF SUCH TERM IS REQUIRED BY STATUE..." Id. 18 U.S.C. 3583(a)(emphasis added). In this case, the Court, defense counsel, and USAO all mistakenly thought that the statue of conviction did not require a term of supervised release, despite the plea agreement expressly requiring 4-yrs of SRT using the word "must." Moreover, "plea agreements, although arising in the criminal context, are analyzed under contract law standards." US v. Williams, 510 F.3d 416, 422 (3d. Cir. 2007)(cleaned up). The analysis begins with "the plain meaning of the agreement itself." Id. at 425. "[B]ecause a defendant gives up multiple constitutional rights by entering into a plea agreement, courts must carefully scrutinize the agreement to insure [sic] that the government has fulfilled its promises." Id. at 422. Given "the government's tremendous bargaining power, courts will strictly construe the text against the government when it has drafted the agreement." US v. Floyd, 428 F.3d 513, 516 (3d

-4-

Cir. 2005)(cleaned up). Therefore, "any ambiguities in a plea agreement must be construed against the government." Williams, 510 F.3d at 422. Here, the defendant pled guilty with the explicit understanding that the USAO will ensure that the Court "must" impose the statutorily mandated term of at least 4 years of SRT. He would not have pled guilty if he knew the USAO, although, inadvertently would be breaching the terms of the plea agreement. The plea colloquy further bolsters the defendant's claim as the Court specifically warning him about "mandatory" SRT.

Second, U.S.S.G. 5D1.1(c) does not counsel a different result. At sentencing, the Court applied USSG 5D1.1(c) to support it's decision of not imposing supervised release. Section 5D1.1(c) provides that "the Court ordinarily should not impose a term of supervised release in a case in which supervised release is NOT REQUIRED by statue AND the defendant is a deportable alien who likely will be deported after imprisonment." Notably, 5D1.1(c) requires both factors, i.e. no statutorily mandated supervised release AND that the defendant is deportable. Therefore, it was erroneous for the Court to apply 5D1.1(c) in this case.

Third, 18 U.S.C. Section 3553(a)(6), emphasizes, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Currently, numerous alien defendants, who like this defendant, do not have a final order of removal are being released to ICE after successfully obtaining their FSA time-credits. See for e.g.Sierra v. Jacquez, 2022 U.S. Dist. lexis 234525, 2022 WL 18046701, at *3 (W.D. Wash. Dec. 27, 2022)("[T]he only plausible reading based upon the plain language of Section 3632(d)(4)(E)(i) and (ii) is only prisoners with a final order of removal are statutorily ineligible to apply for FSA time credits."), report and recommendation adopted, 2023 U.S. Dist. lexis 6938, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023); Saxton v. Warden FCI-Mendota, 2024 U.S. Dist. Lexis 1124, 2024 WL 37057, at *1 (E.D. Cal. Jan. 3, 2024)(noting that petitioner was released to ICE custody after BOP determined he was not subject to a final removal order and thus applied his earned FSA time credits). The only difference between these alien defendants' and this defendant is that they were sentenced to a term of supervised release. A 12-month sentencing disparity between these alien defendants' and this defendant who are undisputedly similarly situated is surely unwarranted. Additionally, as discussed before, more culpable codefendants' are effectively serving 1-year less than the defendant, who was deemed as a minor participant.

Fourth, the Appellate Courts' have held that, notwithstanding USSG 5D1.1(c), "supervised release for deportable alien is permissible if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case. 5D1.1, cmt., application n.5. See for e.g. US v. Nunez, 835 Fed.Appx.655 (3d Cir. Oct 1, 2020), No. 20-1032; US v. Azcona-Polanco, 865 F.3d 148, 151 (3d Cir. 2017). The instant case is no different.

Subjecting the defendant to a term of supervised release ensures at a minimum his prosecution for illegal reentry should he enter the country again. Ostensibly, it adds a layer of protection for the people in New York and USA as a whole, currently plagued by the issue of illegal immigration.

Fifth, the catchall provision for "any other circumstances" that is "similar in gravity" to those specifically named can constitute extraordinary and compelling circumstances. See November 1, 2023 amendments to U.S.S.G 1B1.13(b).

Sixth, the Court can take notice that Congress enacted FSA with two primary goals: (a) to reduce prison population, and (b) to reduce the costs associated with incarceration. Imposing a term of supervised release so that the defendant can obtain the relief afforded by FSA would not only serve these two goals, it would also save American tax-payers tens of thousands of dollars, which would likely be required to house the defendant for additional 365 days.

(3) Court has authority under 18 U.S.C. 3582(c)(1)(A) and Rule 35(a) to modify the judgement to include SRT. 18 U.S.C. Section 3582(c)(1)(A) permits the Court to modify a defendant's term of imprisonment, "after considering the factors set forth in 3553(a) to the extent that they are applicable, " if this Court finds that "extraordinary and compelling reasons warrant such a "modification and that such modification is consistent with applicable policy statements issued by the Sentencing Commission." See also Setser v. US, 566 U.S. 231, 242-43 (2012)(noting that "when the district court's failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant," section 3582(c)(1)(A) "provides a mechanism for relief.")

Several district courts across the circuits have found extraordinary and compelling circumstances based on similar facts. See for e.g. US v. Oprea, No. 11-CR-64, 2023 WL 6958690 (D.N.H. Oct. 20, 2023); US v. Perez Sanchez, No. 16-CR-661-1, 2024 U.S. Dist. Lexis 43529, 2024 WL 1069884, at *3-4 (E.D.N.Y. Mar. 12, 2024); US v. Nienadov, 2023 U.S. Dist. Lexis 107812, 2023 WL 4139026 (S.D. Texas June 22, 2023); US v. Garcia-Beltran, 2024 U.S. Dist. Lexis 191815 (9th Cir. Oct 21, 2024). These courts have held that, although this statue expressly "contemplates the situation in which an inmate is seeking a reduction to his..original sentence," not one in which he seeks "a modest increase to that sentence,"Oprea, 2023 WL 6958690, at *2, the practical effect of granting defendant's request would be a reduction in his term of incarceration. That defendant is technically seeking an increase to his sentence should not bar him from seeking the practical relief that Section 3582(c)(1)(A) was designed to afford.

The facts and circumstances in this case are identical to Garcia-Beltran. There, the Court reasoned, "the defendant's pending motion argues that 21 U.S.C. 841 [same statue here] requires that the court impose a term of supervised release

-6-

as part of his sentence...the court agrees with the position taken by defendant...because a term of supervised release was REQUIRED by statue in defendant's case, U.S.S.G. 5D1.1(c) did NOT apply (emphasis added). The Court went onto cite a myriad out of circuit cases as persuasive authority for it's position including US v. Roccisano, 673 F.3d 153, 158 (2d Cir. 2012)("U.S.S.G. 5D1.1(c) - this provision is inapplicable here because Roccisano's term of supervised release was a statutorily mandated component of his sentence for narcotics trafficking."); US v. Lawrence, 510 Fed.Appx. 406, 409 (6th Cir. 2013)("[S]ection 5D1.1(c) is inapplicable because Lawrence's term of supervised release was statutorily mandated component of his sentence for possessing marijuana with the intent to distribute."); US v. Reyes, No. 12-20066-12-KHV, 2015 U.S. Dist. Lexis 178583, 2015 WL 10945002 (D.Kan. Apr. 27, 2015)(same).

In Perez Sanchez, the district court reasoned that there is "no reason that an individual's immigration status should preclude him from earning and applying FSA credits for as long as he is subject to only an ICE detainer [not final order of removal]." Perez Sanchez, 2024 U.S. Dist. Lexis 43529, *4. The court further suggested that denying such noncitizens the opportunity for early release creates "a quintessential unwarranted disparity." Id *5. This Court is requested to adopt the reasoning in Oprea, Perez Sanchez, and Nienadov to modify the defendant's sentence to include a term of supervised release. As in Oprea, but for defendant's deportation, this Court "would have originally sentenced him to a significant period of supervision." Id. To deny him the relief he now seeks would prevent the goals of the First Step Act from being "fully realized." Id.

Alternatively, as discussed in INFRA, the Court can modify the judgement to include a term of SRT under Rule 35(a) as the Court did in USA v. Wellington De La Cruz, No. 24-CR-58-MAS did at USAO's motion. See Dkt-79.

(4) New Jersey's and New Hampshire's US Attorney's Office Conceded Such An Issue In Identical Circumstances.
In US v. De La Cruz, the New Jersey's USAO conceded this very issue in identical circumstances. There, De La Cruz as here pled guilty to 21 U.S.C. 841(b)(1)(C) and filed a motion to add a term of supervised release. Dkt-72. The USAO joined the motion stating, "the Government..respectfully asks this Court to enter an amended judgement of conviction to include the mandatory three year term of supervised release..the Government acknowledges that the parties did not object to the application of 5D1.1(c) at sentencing; the failure to do so was an error and oversight on the part of the Government." Dkt-79. The pleading was signed by Todd Blance, US Deputy General. Similarly, in USA v. Johan M. Rodriguez, the USAO for the district of new hampshire conceded the issue. The defendant hopes the USAO for this district would do the ethical thing here by joining this motion.

(5) 3553(a) factors favor defendant.

At sentencing, the Court recognized that the defendant was a minor participant, had zero criminal history, and "unlikely" to re-offend. Yet, due to the complexities of the application of FSA credits, he is at the cusp of overserving his sentence. Notwithstanding this injustice, he has continued to participate in prison education programs, won accolades for his exemplary performance, which only bolster the 3553(a) factors in his favor.

IV. CONCLUSION.

It is for the points, facts, and authorities cited in this motion that the defendant respectfully requests this Honorable Court

to modify the judgement to include a term of 4 years SRT. The defendant is proceeding pro se, his filings, however

inartfully pleaded must be liberally construed and held to lesser stringent standards. Haines v. Kerner (1972) (citations

omitted).

Dated: April 2, 2026

Respectfully submitted by:

*Nelson Agramonte*

Nelson Agramonte-Minaya
Reg. No. 67460-509
FCI Allenwood Low, P.O. Box 1000
White Deer, PA 17887

EXHIBIT-A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 9, 2022

Anthony Cecutti, Esq.
217 Broadway, Suite 707
New York, New York 10007

### Re: United States v. Nelson Agramonte-Minaya, 21 Cr. 661 (PAE)

Dear Mr. Cecutti:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Nelson Agramonte-Minaya ("the defendant") to Count One of the above-referenced Indictment. Count One charges the defendant with conspiring to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21 United States Code, Sections 846 and 841(b)(1)(A). Under the terms of this agreement, however, the Government will accept a guilty plea to the lesser-included offense of participating in a conspiracy to distribute and possess with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). This lesser-included offense carries a maximum term of imprisonment of 40 years; a mandatory minimum term of imprisonment of five years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of four years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(B) and Title 18, United States Code, Section 3571, of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his participation in a conspiracy to distribute and to possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine from in or about August 2021 up to and including in or about September 2021, in the Southern District of New York and elsewhere, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

2022.05.04

EXHIBIT-B

BP-A0324
JUN 10

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

## WORK PERFORMANCE RATING - INMATE

| Inmate's Name<br>AGRAMONTE, NELSON | Register No.<br>67460-509 | Unit<br>I-A |
|---|---|---|
| Evaluation Period<br>09-01-2022 - PRESENT | Work Assignment<br>UNIT I-A LAUNDRY ORDERLY | |

Bonus Justification

Inmate Agramonte is an outstanding laundry orderly. He performs his duties with little to no supervision. Inmate Agramonte assists other inmates in their duties in addition to his own. Inmate Agramonte is an outstanding orderly who works well with others. He is well organized, dependable, timely, and always brings a positive attitude to his work.

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area. Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_√_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_√_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
_√_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_√_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_√_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_√_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
____1. Poor. Resentful and hostile. May argue with supervisor.
____2. Fair. Resists or ignores suggestions.
____3. Satisfactory. Generally does what is told without any fuss.
____4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
____1. Poor. Negativistic, hostile, annoying to others.
____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
____4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

____1. Fire or lay off that individual?
____2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
____4. Raise the person's pay but keep the person at the same job?
____5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
1. Performance Pay - Grade Class (Check one) ___ 1 ___ 2 ___ 3 _✓_ 4 ___ M.

2. Hours of Satisfactory work __100__ .

3. Regular Pay __$12__ .

4. Bonus Recommended: ___ yes; ___ no

5. Total Pay __$12__ . _____

| Supervisor's Signature<br>R. Alamo / Correctional Counselor | Date<br>10/05/2022 |
|---|---|
| Inmate's Signature   X Nelson Antonio Agramonte Minaya | Date<br>10/05/2022 |

Inmate _____ was requested to sign this rating, but refused, citing the following reason:

| Staff Witness' Signature | Date |
|---|---|

**FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER**        **SECTION 4**

CERTIFIED MAIL

9589 0710 5270 3441 3957 94

Nelson Aramonte-Minayo
C/o Low Security Correctional
Institution Allenwood Low # 67460-509

PO Box 1000
White Deer, PA 17887



RECEIVED
APR - 6 2026
CLERK'S OFFICE
S.D.N.Y.

USM 4P
SDNY

USM 4P
SDNY

DOLLAR   DOLLAR   DOLLAR

◇67460-509◇
Clerk Of The Court
500 Pearl ST
Room 120
NEW YORK, NY 10007
United States



U.S. POSTAGE PAID
CM LG ENV
WHITE DEER, PA 17887
APR 03, 2026

$0.00
R2305K138953-06